IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL DELGADO, | CASE NO. CV F 09-1839 LJO SKO |
| Plaintiff, | **ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT** |
| vs. | |
| ORCHARD SUPPLY HARDWARE CORPORATION, | |
| Defendant. / | |

The parties have filed cross motions for summary judgment. Plaintiff Daniel Delgado filed a motion for summary judgment against defendant Orchard Supply Hardware on June 28, 2011. Defendant Orchard Supply filed a cross motion for summary judgment also on June 28, 2011.

Each party filed an opposition on July 26, 2011. The replies were filed on August 2, 2011. Pursuant to Local Rule 230(g), this matter is submitted on the pleadings without oral argument, and the hearing set for August 9, 2011 is VACATED. Having considered the moving, opposition, and reply papers, as well as the Court's file, the Court issues the following order.[1]

---

[1] The parties have filed numerous objections to the evidence submitted by the opposing side. The Court has not relied on any of the disputed evidence to grant or to deny summary judgment. Where the Court has denied summary judgment as to the claims, the Court found triable issues exist regarding the issues. To the extent that the Court may have considered some of the disputed evidence in finding that triable issues exist regarding the claims, the objections are OVERRULED. Further, the Court is not obligated to consider matters not specifically brought to its attention. Thus, it is immaterial that helpful evidence may be located somewhere in the record. The motion and opposition must designate and reference specific triable facts. *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001).

1

**FACTUAL BACKGROUND**

This is a civil rights action by plaintiff Daniel Delgado ("Delgado") for disability discrimination at the building, structure, facility, complex, property, land, development, and/or surrounding business complex known as: Orchard Supply Hardware Store, located at 5653 Kings Canyon Road, Fresno, California (hereinafter "the Store"). Delgado seeks damages, injunctive and declaratory relief, attorney fees and costs, against Orchard Supply Hardware Corporation ("OSH").

It is undisputed that Delgado has a disability. He cannot walk and uses a wheelchair to travel and use public facilities. (Doc. 35-7, Joint fact no.4; Doc. 54-1, OSH Response fact no. 2.) Delgado visited the OSH Store and encountered several accessibility barriers. Some of the barriers include operable paper towel dispensers in the men's restroom; check-out aisle accessibility designation; men's restroom grab bar; toilet seat height; specific parking lot barriers, among other barriers. Following the filing of this lawsuit, the interior building accessibility barriers were remedied by OSH. The only alleged interior architectural barrier that Delgado currently seeks to enjoin at the OSH facility is the strike-side clearance of the hallway door leading to the facility restrooms.

Delgado also seeks to enjoin the exterior accessibility barriers in the parking lot, none of which has been remedied.[2] For the exterior barriers, the dispute between the parties centers upon whether OSH owns, operates and/or controls the exterior areas of the OSH Store such that OSH could remedy the exterior accessibility barriers in the parking lot. Delgado contends that OSH has control over the exterior barriers. OSH contends that the control necessary to remedy the parking lot exterior barriers is exclusively with the landlord.

Delgado alleges the following claims for relief:

1. Injunctive relief under the Americans with Disabilities Act, 42 U.S.C. § 12188(a)(2) ("ADA");

2. Damages pursuant to the Disabled Persons Act, California Civil Code §54;

3. Damages pursuant to the Unruh Civil Rights Act ("Unruh Act"), California Civil Code

---

[2] Delgado identifies multiple exterior architectural barriers which have not been remedied in the parking lot. (See Doc. 38, Delgado Motion p. 8-9.) In general terms, these barriers include: improper number of compliant accessible parking spaces; parking spaces without access aisles; lack of proper signage; improper location of accessible parking spaces and route to accessible features and building; improper slope of parking lot at accessible parking spaces; and improper curb ramps.

2

1 §§ 51 et. seq.

2     4.    Injunctive relief pursuant to California Health and Safety Code §§19955 and 19959.

3 Both parties move for summary judgment pursuant to Rule 56 as to all claims.

## ANALYSIS AND DISCUSSION

**A.    Summary Judgment/Partial Summary Judgment Standards**

F.R.Civ.P. 56(b) permits a "party against whom relief is sought" to seek "summary judgment on all or part of the claim." Summary judgment/adjudication is appropriate when there exists no genuine issue as to any material fact and the moving party is entitled to judgment/adjudication as a matter of law. F.R.Civ.P. 56( c); *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The purpose of summary judgment/adjudication is to "pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec.,* 475 U.S. at 586, n. 11, 106 S.Ct. 1348; *International Union of Bricklayers v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir. 1985). On summary judgment/adjudication, a court must decide whether there is a "genuine issue as to any material fact," not weigh the evidence or determine the truth of contested matters. F.R.Civ.P. 56 ( c); *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598 (1970).

To carry its burden of production on summary judgment/adjudication, a moving party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). "[T]o carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact." *Nissan Fire*, 210 F.3d at 1102. "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505 (1986).

"If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of

persuasion at trial." *Nissan Fire*, 210 F.3d at 1102-1103; *see Adickes*, 398 U.S. at 160, 90 S.Ct. 1598. "If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Nissan Fire*, 210 F.3d at 1103. "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." *Nissan Fire*, 210 F.3d at 1103; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986) ("Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make the showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.")

**B.    Overview of the ADA**

Title III of the Americans with Disabilities Act ("ADA" Title III, 42 U.S.C. § 12181 et seq.) prohibits private entities from discriminating on the basis of disability in "commercial facilities." The purpose of this provision is to ensure that these properties are readily accessible to and usable by disabled persons. 42 U.S.C. § 12181 et seq. There are four levels to the ADA's regulatory scheme: (a) the ADA statutory language; (b) regulations issued by the Department of Justice; 42 U.S.C.A. § 12186(b), (c);  (c) the ADA Accessibility Guidelines (ADAAG), which are specific dimensioning and design standards adopted by the Department of Justice; Id. §§ 12204(a)-(b), 12186(c); 28 C.F.R. pt. 36, app. A. § 1 et. seq. (ADAAG), and (d) supplementary interpretive materials issued by the DOJ, such as the Technical Assistance Manual.

The parties agree that to prevail under the ADA, plaintiff must satisfy the following elements:

1. Plaintiff must be disabled. 42 U.S.C. § 12182(a).
2. The subject facility must be a place of public accommodation and therefore governed by Title III of the ADA. 42 U.S.C. 12182(a).
3. The subject facility must have an architectural barrier. 42 U.S.C. § 12182(b)(2)(A)(iv).
4. The plaintiff must have actual knowledge of the architectural barrier precluding his full and equal access to the facility. 42 U.S.C. 12188(a).

The parties agree that the first two elements and the fourth element are satisfied. They agree that

plaintiff is disabled, and they agree that the OSH Store is a place of public accommodation. Defendant OSH admits that it owns, operates and/or leases the Store and that the Store is a public accommodation facility/retail store, open to the public, which is intended for nonresidential use and whose operation affects commerce. As to the fourth element, it is undisputed that Delgado visited the OSH Store on multiple occasions.[3]

## C.     Conflicting Evidence Regarding the Interior Architectural Barrier

OSH contends that the sole interior architectural barrier identified by plaintiff, the hallway strike door, has been remedied. OSH contends that the hallway strike door has been fitted with an automatic opener, removing any potential barrier related to strike-side clearance. If no architectural barriers exist at the time the court is asked to provide relief, the ADA claim is moot because there is nothing for the court to order the facility to do. *City of Los Angles v. Lyons*, 461 U.S. 95, 102 (1983).

Delgado contends that the remaining interior architectural barrier of the strike-door remains to be remedied. Delgado argues that OSH has not demonstrated that it has met the requirements necessary to make the automatic door opener a permanent solution to the barrier, nor has OSH provided any testimony that the alleged automatic door opener meets state or federal accessibility requirements.

A disputed issue of fact exists as to whether the interior hallway door barrier satisfies accessibility requirements. OSH presents evidence by its Director of Facilities, Mark Bringuel, that an automatic door opener was installed on the hallway door. (Doc. 35-4, Bringuel Decl. ¶5.) Mr. Bringuel testifies that:

    1.    The activating devices for the door are less that 48" above the finished floor surface, are within view and outside the swing, of the door

    2.    The door opens to a minium of 90 degrees upon activation of the switches, remains open for at least 5 seconds after release of the switches, and the closer provides a minimum 5 seconds when it closes from 90 degrees to within 12 inches of latch.

Delgado presents evidence from expert Gary D. Layman that the device installed does not satisfy the ADAAG. (Doc. 52-10, Layman Decl. ¶¶5-8.) Mr. Layman states that the ADAAG provides

---

[3] OSH disputes the fact based upon Delgado lack of "specific recollection of each [of] the trips" he made. (Doc. 54-1, Response to Plaintiff's Facts 53.) The Court does not find OSH's position a dispute of a material fact.

1  requirements for automatic door openers and that certain Guidelines are applicable for automatic door
2  openers while others apply to fast opening doors. *Id.* ("1991 ADA standards requires the doors to be
3  installed per ANSI/BHMA A156.19, ANSI/BHMA A156,19 requires the installation to comply with the
4  most current codes at the time of installation . . ."). Mr. Layman cites various reasons why the door was
5  not installed properly. (Doc. 52-10, Layman Decl. ¶¶8-12.)  The door was not permitted, it was not
6  inspected, the proper materials, design, test were not provided or approved.

7  This conflicting evidence, that offered by OSH and by Mr. Layman, creates a material issue of
8  fact.  The evidence presented by OSH, viewed in the light most favorable to that party, shows that the
9  remaining interior barrier of the hallway door, has been remedied.  Plaintiff objects to Mr. Bringuel's
10 testimony on the grounds, among others, that Mr. Bringuel fails to lay the foundation for giving expert
11 testimony.  However, Mr. Bringuel does not testify that the automatic door satisfies the ADA or
12 regulations for accessability.  Rather, his testimony is limited to what could be viewed by personal
13 observation, and does not opine as to ADA compliance.  Delgado presents competent evidence that the
14 hallway door may not have been remedied in accordance with appropriate Guidelines and local
15 ordinances.  Therefore, a material issue of fact remains as to the remedy to the interior hallway door.

16 Delgado argues that if the Court finds that barriers currently exist for which OSH is responsible,
17 the Court must issue an injunction.  But here, the Court finds there are issues of fact as to whether the
18 remedy installed satisfies accessibility requirements under the ADA and applicable state law.  OSH
19 installed a device on the hallway door which it claims satisfies accessibility requirements, but plaintiff
20 contends otherwise.  Accordingly, the parties have raised an issue of fact.

21 **D.      Responsibility between Landlord and Tenant under the ADA**

22 Delgado alleges the exterior architectural barriers exist in the parking lot of the OSH Store,
23 which remain to be remedied.  He argues that OSH and the landlord are jointly and severally liable for
24 exterior barriers in that, pursuant to the lease terms and the landlord/tenant course of conduct, OSH has
25 control over the parking lot to remove the barriers, and has control over the exterior areas.  As an
26 example, Delgado points to evidence that OSH installed cart corrals in the parking lot and repaired
27 fences.

28 OSH argues that the parking lot is the sole responsibility of the landlord.  OSH argues that the

lease between OSH and the landlord identities that the parking lot is a common area under the exclusive control of the landlord.[4]

### 1. Under the ADA, Both Tenant and Landlord May Be Liable

The primary dispute is whether OSH, as the tenant of the facility, is liable for exterior barriers. It is undisputed that OSH is the tenant of the premises and that Save Mart is the owner/landlord.

A landlord and tenant may agree to allocate responsibility for compliance in their lease. The relevant regulation provides:

> Both the landlord who owns the building that houses a place of public accommodation and the tenant who owns or operates the place of public accommodation are public accommodations subject to the requirements of this part. As between the parties, allocation of responsibility for complying with the obligations of this part may be determined by lease or other contract.

28 C.F.R. § 36.201(b). The regulation states that a landlord is a "public accommodation," which triggers coverage under Title III. See § 12182(a).

Significantly, the regulation provides that allocation of responsibility between the landlord and a tenant by the lease is effective only "[a]s between the parties." 28 C.F.R. § 36.201(b). The Ninth Circuit has held that contractual allocation of responsibility has no effect on the rights of third parties. *Botosan v. Paul McNally Realty*, 216 F.3d 827, 833 (9th Cir. 2000). "[B]oth the landlord and tenant are liable under the Act." *Id.* The ADA's prohibitions against discrimination apply to "any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a) (emphasis added). As a result, "[b]oth the landlord and the tenant are public accommodations and have full responsibility for complying with all ADA title II requirements applicable to that place of public accommodation." *Botosan*, 216 F.3d at 833 (quoting Department of Justice, Technical Assistance Manual on the American With Disability Act § III-1.2000 (1994)).

Therefore, even if the lease agreement between OSH and Save Mart arguably allocated

---

[4] OSH cites to the entirety of the 90+ page lease without identifying any specific provision which supports its argument. (See OSH Uncontroverted Fact no. 8). Delgado however, disputes the fact that OSH lacks control. Delgado cites to Lease p. 16, paragraph A granting OSH a nonexclusive easement; paragraph B giving OSH control over parking areas and preventing the landlord from altering without OSH permission; Lease p. 14, paragraph 7.6A, giving OSH the right to make any repairs not made by landlord.

1  responsibility to Save Mart to make physical alterations to the property necessary to comply with the
2  ADA, such allocation has no affect on OSH's obligations to Delgado and other members of the disabled
3  community.

### 2. Extent of Control is an Issue of Fact

This Court must take into consideration the nature and circumstances of control of the parking lot. In *Disabled Rights Action Committee v. Las Vegas Events, Inc.*, 375 F.3d 861 (9th Cir. 2004), the court explained that a party's obligation under Title III is determined with respect to the nature and circumstances of its relationship with the property, among other considerations. *Disabled Right Action*, 375 F.3d at 880. In *Disabled Rights Action Committee*, the plaintiff sought to preclude the defendant lessees from operating a rodeo at a facility until such time as the lessee complied with the ADA. The court enjoined defendant lessees to make the facility "accessible to the degree possible within the scope of its lease." *Las Vegas Events*, 375 F.3d at 880-881. The court found that this provided meaningful relief because the lessees could "mak[e] certain kinds of operational decisions regarding conditions over which they have control-e.g., enjoining them from removing accessible floor seating, or requiring the erection of temporary ramps or lifts." *Las Vegas Events*, 375 F.3d at 880. *Hubbard v. Rite Aid Corp.*, 433 F.Supp.2d 1150 (S.D.Cal. 2006) involved violations of the ADA by the owners of drug store in a shopping center and land parcel. The sidewalk, the path of travel to public right of way on the land parcel where the drug store was located in the shopping center, was not in compliance with ADA requirements. The Court declined to issue an injunction, stating: "Rite Aid cannot alter the path of travel on property it does not own or otherwise control." The Court stated that it "cannot order the Defendants in this case to alter the path of travel on property that Defendants do not own or operate." *Hubbard*, 433 F. Supp. 2d at 1170.

Here, there are disputed issues of fact as to the nature and circumstances of OSH's control over the parking lot. OSH argues that the lease between OSH and its landlord identifies the parking lot as a common area under the exclusive control of the landlord. It argues under the lease, OSH has no obligation or ability to make changes to the parking lot. Delgado presents evidence that the lease between OSH and the landlord grants to OSH an easement and a right to use the common areas, including the parking lot. (Lease p. 16, §8.1.) Delgado cites to the lease which defines OSH "Sphere

8

1 of Influence" as including the parking lot and ingress and egress. (Lease p.16, §8.1.(B).) Indeed,
2 Delgado notes that the lease requires OSH's consent before the landlord may alter the parking lot or
3 facilities. Delgado points to other lease provisions which permit OSH to make repairs to the exterior,
4 and that OSH has done so, such as installing cart corrals and repairing fences.

5       The extent of control a party has over property such that it is obligated to make ADA repairs is
6 an issue of fact. Here, OSH presents evidence that it does not have authority to make changes to the
7 parking lot. Delgado presents evidence that OSH has such authority. The evidence is disputed as to the
8 control over the lot.

### 3. Settlement and Release between Delgado and Landlord

10       OSH argues that plaintiff has settled with the landlord, and therefore, with OSH. OSH argues
11 that is it a "Released Party" by the terms of the Release Agreement. The Release Agreement defines
12 "Released Parties" as Save Mart, "and any other entity (present, future, or former), known or unknown,
13 whom Plaintiff might claim owns or operates the exterior areas of the Facility and surrounding parking
14 lot." (Doc. 58-2, Sealed Release Agreement p. 1 n.1.) OSH argues that since plaintiff contends OSH
15 "operates" the exterior of the Store, OSH is included in the terms of the Release Agreement. In its reply,
16 OSH argues that the only condition what was required to be performed was payment of the settlement
17 amount, not repairs of the architectural barriers. OSH argues that this release of all claims includes
18 release of OSH.

19       Delgado argues that the release was executed between Save Mart and Delgado. The release
20 provides that Delgado released Save Mart in consideration for the payment by Save Market, and
21 including removal of the barriers. Delgado presents evidence that none of the remedial measures agreed
22 upon in the release have been undertaken. Delgado argues that therefore, neither Save Mart nor OSH
23 has been released under the Agreement as the Release was conditioned upon the performance of the
24 barrier removals which has not been done.

25       The Settlement Agreement and Release ("Release Agreement") is between Delgado and Save
26 Mart. The Release Agreement states that, "This Settlement Agreement and Release in Full is between
27 Daniel Delgado . . on the one hand, and Save Mart Supermarkets . . . on the other hand." (Doc. 58-2,
28 Sealed Release Agreement p.1 of 10.) These parties to the agreement agreed that they would settle for:

1  (1) payment of a specific sum of money from Save Mart to Delgado, and (2) "Defendant agrees to make
2  modifications . . . at the Facility, and to make these changes within twelve (12) months . . ." (Doc. 58-2,
3  Sealed Release Agreement p. 2 of 10.)  The consideration which was given in exchange for the release
4  was "the Settlement Amount, and the terms contained within the Agreement, . . ."  Thus, Delgado settled
5  based upon the payment of money and also based upon the other terms of the Agreement, which
6  included the modifications to the Store.

7  A Release Agreement is a contract.  The formation of a binding contract requires: (1) parties
8  capable of contracting; (2) mutual assent; (3) a lawful object; and (4) sufficient consideration. See Cal.
9  Civ.Code. §§ 1550, 1565.  There is no dispute that the Release Agreement is a binding contract as
10 between Save Mart and Delgado, as all elements are met.

11 OSH's position, while not specifically stated, is that it is an unintended third party beneficiary
12 of the Release Agreement.  It is not a named party, but claims to have derived a benefit from the Release
13 Agreement.  Indeed, OSH is not a contracting party to the Release Agreement, and any rights it may have
14 under the agreement are those of a third party beneficiary. *See Garcia v. Truck Ins. Exchange*, 36 Cal.3d
15 426, 440 (1984).

16 Here, as a third party, OSH, seeks to enforce the terms of the release.  "A third party beneficiary
17 may enforce a contract made for its benefit." *Hess v. Ford Motor Co.*, 27 Cal.4th 516, 524 (2002). Civil
18 Code section 1559 provides: "A contract, made expressly for the benefit of a third person, may be
19 enforced by him at any time before the parties thereto rescind it."  A third party may qualify as a
20 beneficiary under a contract where the contracting parties intended to benefit that third party and such
21 intent appears on the terms of the contract.  Civil Code section 1559 excludes enforcement of a contract
22 by persons who are only incidentally or remotely benefitted by it.  "A third party should not be permitted
23 to enforce covenants made not for his benefit, but rather for others. He is not a contracting party; his
24 right to performance is predicated on the contracting parties' intent to benefit him...." *Jones v. Aetna
25 Casualty & Surety Co.*, 26 Cal.App.4th 1717, 1724 (1994).

26 In essence, the question is whether the contracting parties intended OSH to be a third party
27 beneficiary. "The circumstance that a literal contract interpretation would result in a benefit to the third
28 party is not enough to entitle that party to demand enforcement. The contracting parties must have

10

intended to confer a benefit on the third party." *Neverkovec v. Fredericks*, 74 Cal.App.4th 337, 348–349 (1999). Further, "while the contracting parties may testify regarding their actual intent, the sufficiency of such evidence must be determined according to the usual objective standard of contract interpretation." *Id*. In determining the meaning of a written contract allegedly made, in part, for the benefit of a third party, evidence of the surrounding circumstances and negotiations of the parties in making the contract is both relevant and admissible. *Neverkovec*, 74 Cal.App.4th at 351.

Reading the Release Agreement as a whole, and in the context of the circumstances under which it was entered, the Court finds a material issue of fact as to whether the parties intended to release OSH from further claims. It is not at all clear from any evidence that OSH was an intended beneficiary of the Release Agreement. The burden is on the third party to prove the parties to the release agreement intended to benefit the third party. *Neverkovec*, 74 Cal.App.4th at 348; *Vahle v. Barwick*, 93 Cal.App.4th 1323, 1328 (2001) (to obtain summary judgment on the ground that a general release has discharged him from liability, a third party to the release agreement must affirmatively show that the parties intended to release him. The burden of proof is on the third party.)

OSH has failed to carry its burden of showing that the contracting parties intended to release OSH from liability for the exterior architectural barriers. OSH has offered no evidence of the contracting parties' intent. Rather, OSH relies solely upon the Release Agreement language.

The Release Agreement language which purports to release OSH is, at best, ambiguous. An ambiguity arises when language is reasonably susceptible of more than one application to material facts. *Dore v. Arnold Worldwide, Inc.*, 39 Cal.4th 384, 391, 46 Cal.Rptr.3d 668, 673 (2006). As California courts have observed:

> "[the] meaning of language is to be found in its applications. An indeterminacy in the application of language signals its vagueness or ambiguity. An ambiguity arises when language is reasonably susceptible of more than one application to material facts. There cannot be an ambiguity per se, i.e., an ambiguity unrelated to an application."

*Dore v. Arnold Worldwide, Inc.*, 39 Cal.4th at 391 (the phrase "at any time" is not in itself ambiguous with respect to cause for termination does not preclude the possibility that AWI's letter, when considered as a whole, contains ambiguity on the topic); *see also Herzog v. National American Ins. Co.,* 2 Cal.3d 192, 199, fn. 5, 84 Cal.Rptr. 705 (1970) ("language which might be considered ambiguous as applied

11

to some circumstances is not necessarily ambiguous per se".)  "[L]anguage in a contract must be construed in the context of that instrument as a whole, and in the circumstances of that case, and cannot be found to be ambiguous in the abstract." *Powerine Oil Co., Inc. v. Superior Court*, 37 Cal.4th 377, 391, 33 Cal.Rptr.3d 562, 572 (2005). Thus, the application of the language to the facts may create an ambiguity.

Given the circumstances of the Release Agreement, and in light of the ongoing litigation against OSH, there is a material issue of fact as to whether OSH was released by the Release Agreement.

**E.     State Law Claims**

In addition to the ADA claim, the complaint asserts claims under California's Unruh Civil Rights Act and California's Disabled Persons Act. Cal. Civ.Code §§ 51, 54. Plaintiff seeks recovery of statutory damages under California law.

    **1.     Overview of State Law Protections**

Unruh provides that "All persons within the jurisdiction of this state are free and equal, and ... are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever," Cal.Civ. Code § 51(b). Section 52 provides a damages action for violations of thereof. Section 51(f), in turn, expressly renders an ADA violation a violation of Unruh: "[a] violation of the right of any individual under the Americans with Disabilities Act of 1990 ... shall also constitute a violation of this section."

The Disabled Persons Act ("DPA") provides that "[i]ndividuals with disabilities or medical conditions have the same right as the general public to the full and free use of the streets, highways, sidewalks, walkways, public buildings, medical facilities, including hospitals, clinics, and physicians' offices, public facilities, and other public places." Cal. Civ.Code § 54(a). It further provides that "[i]ndividuals with disabilities shall be entitled to full and equal access ... to accommodations, advantages, facilities ... places of public accommodation, amusement, or resort, and other places to which the general public is invited...." Cal. Civ.Code § 54.1(a)(1). As with the Unruh Act, the DPA allows for a plaintiff to establish a violation of the DPA by a showing of an ADA violation. See Cal. Civ.Code §§ 54(c), 54.1(d). A showing of intent is not required to obtain damages under the DPA. *Donald v. Café Rovale, Inc.*, 218 Cal.App.3d 168, 177-80, 266 Cal.Rptr. 804 (1990).

**2.   Actionable Violations of Relevant State or Federal Access Standards**

OSH argues that plaintiff cannot establish he encountered barriers or was deterred from visiting the Store. (Doc. 35, Moving paper p.8-10.) OSH argues that unlike the ADA, California law places no obligation on pre-exisiting places of public accommodation to remove barriers. Under California law, a facility must simply comply with the California Building standards that are "in effect on the date of an application for a building permit." Gov. Code §4451(c). OSH argues that the Store was constructed in December 1991 and has not been altered, renovated or remodeled. Since it has not been remodeled, the building standards applicable are those of 1991. OSH argues that plaintiff's expert, Mr. Layman, opined that the Store failed to comply with the 2007 California Building Code, which do not apply to a store constructed in 1991. (Doc. 35-3, Layman Depo. p.12:2.)

Statutory damages are available under Civ.Code §52(a) or 54.3(a) only "if a violation or violations of one or more construction-related accessibility standards denied the plaintiff full and equal access to the place of public accommodation on a particular occasion." Civ.Code §55.56(a). Gov.Code 4451 provides that a public accommodation must comply with California Building code standards "in effect on the date of an application for a building permit." Buildings in existence as of the date the statutes were enacted need not be modified unless and until "alterations, structural repairs or additions are made to such building or facility." Gov. Code, § 4456.

OSH relies upon the testimony of Mark Bringuel for the proposition that the Store has not been altered, remodeled or renovated since 1991. (See Doc. 35-4, Bringuel Decl.¶3.) However, Delgado presents evidence that Mr. Bringuel has only been employed for approximately three and one-half years at OSH, and his declaration does not state how he knows about prior construction activities at the Store. He does not explain how he knows, given the brevity of his employment, of all construction activity since 1991. His deposition testimony indicates, arguably, that he does not know of prior construction activity. (Doc. 52-14, Bringuel Depo.)

Delgado presents evidence, from which the Court infers, that Orchard applied for some kind of Store alteration. (Doc. 52-11, Exh. A to Layman Decl.) The documents appear to be a submission to the City of Fresno on behalf of OSH by an engineering company in 1998. Mr. Layman characterizes these documents as "plans submitted by OSH for a permit and the Fresno City plan inspector's

comments for a wall opening and door installation." (Doc. 52-10, Layman Decl. ¶20.) OSH argues that these documents are not a "permit application at all" but are merely plans for a wall opening. (Doc. 62, Reply p.8.) OSH offers no competent evidence for its position.

Mr. Layman's testimony raises an issue of fact as to whether OSH "altered, renovated or remodeled" the Store. Mr. Layman states these document were "plans submitted by OSH for a permit." Whether OSH altered, renovated or modified the Store since 1991 is an issue of fact. The credibility of Mr. Bringuel's testimony, in light of the lack foundational basis, raises an issue of fact.

### 3. Plaintiff will not be Deterred from Visiting the Store

OSH argues that plaintiff has never been deterred from visiting the Store. OSH presents evidence that Delgado testified that he "will always continue to buy stuff at OSH." (Doc. 35-3, Exh. 4, Delgado Dep p. 151.) OSH argues Delgado cannot show he was denied full and fair access because he will not be deterred from shopping at the Store.

Pursuant to Cal.Civ. Code §55.56(b), there are alternative ways to show that Plaintiff was denied full and equal access:

> "A plaintiff is denied full and equal access only if the plaintiff personally encountered the violation on a particular occasion, *or* the plaintiff was deterred from accessing a place of public accommodation on a particular occasion." (Emphasis added.)

Personal encounter alone is sufficient to show denial of full access if "the plaintiff experienced difficulty, discomfort, or embarrassment because of the violation." Cal.Civ.Code §55.56(c).

Delgado submits his declaration which shows that he visited the Store on nine occasions and actually encountered barriers. For instance, he identified that the rear grab bar in the men's restroom was not sufficiently wide such that it was "very difficult for me to properly transfer to and from the toilet from my wheelchair." (Doc. 40, Delgado Decl. 6(d).) Plaintiff states that a check-out aisle was not wide enough for him to access and he attempted to check out in the aisle but it was too small. (Doc. 40, Delgado Decl. 6(b).) Plaintiff need only show that he encountered a violation "*on a particular occasion.*" The statute permits plaintiff to recovered based on each particular occasion that plaintiff was denied full and equal access. Cal.Civ.Code §55.56(c). A plaintiff is denied full and equal access "when he personally encounters the violation" *or* "he is deterred from accessing" the facility. Plaintiff has

raised an issue of fact.

**F.    Supplemental Jurisdiction**

OSH argues that the Court should decline supplemental jurisdiction over the state law claims. It argues that the state law claims are novel and complex state law and that the state law claims "substantially predominate" over the remedy sought through the federal claims. 28 U.S.C. §1367(c).

This Court has supplemental jurisdiction over the state law claims. See *Brady v. Brown,* 51 F.3d 810, 815-16 (9th Cir. 1995) ("The operative facts for both the RICO and the state law claims are the same actions described . . . There was thus a common nucleus of operative facts encompassing both the state and federal claims.") The Court has supplemental jurisdiction if the claims arise from a common nucleus of operative facts.

Here, the claims arise from a common nucleus of operative facts. Both the federal and state law claims are based upon architectural barriers which infringe upon the accessibility to the OSH Store. Accordingly, this Court has supplemental jurisdiction over the state law claims.

The Court will exercise supplemental jurisdiction over the state law claims. Here, the state issues are not unsettled or novel and complex. Plaintiff's state and federal law claim involve the identical nucleus of operative facts, and require a very similar, if not identical, showing in order to succeed. If this court forced plaintiff to pursue his state law claims in state court, the result would be two highly duplicative trials, constituting an unnecessary expenditure of plaintiff's, defendant's, and the two courts' resources. As a practical matter, plaintiff's state law claims for damages may be the driving force behind this action. To rule as OSH proposes, however, would effectively preclude a district court from ever asserting supplemental jurisdiction over a state law claim under the Unruh Act.

## CONCLUSION

For the foregoing reasons, the cross-motions for summary judgment are DENIED in their entirety.

IT IS SO ORDERED.

**Dated:    August 4, 2011**              /s/ Lawrence J. O'Neill
                                          UNITED STATES DISTRICT JUDGE